JOHN BURRELL *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COM-
PANY.

June 2, 1890.

**Guardian—Conveyance to Railway Company—Effect of Confirmation
by Probate Court.**—The approval and confirmation of the probate court,
indorsed upon or annexed to a conveyance by a purported guardian to a
railway company, pursuant to Gen. St. 1878, *c.* 57, § 36, is no proof that
the person who executed the conveyance was such guardian; following
*Dawson* v. *Helmes*, 30 Minn. 107.

Action brought in the district court for Scott county, to recover
$1,000 damages for trespasses on land of plaintiff.   Defence, title in
defendant under the conveyance mentioned in the opinion.   A jury
was waived and the action tried by *Edson*, J., upon whose decision a
judgment was entered for defendant, from which the plaintiff ap-
peals.

*Southworth & Coller*, for appellant.

*W. H. Norris*, for respondent.

MITCHELL, J.[1]   The premises upon which the alleged trespass was
committed belong to plaintiff as one of the heirs and grantee of the
other heirs of James Burrell, unless defendant acquired title under a
deed purporting to have been executed in 1871 by one Kinghorn as
guardian of these heirs, then minors, pursuant to Gen. St. 1878, *c.* 57,
§ 36.   The only evidence offered by defendant in support of its claim
of title was (1) a certified copy of a petition to the probate court by
Kinghorn and the chief engineer of the Hastings & Dakota Railway
Company, (to whose interests the defendant has succeeded,) in which
Kinghorn styled himself guardian of these minor heirs, and stated
that as such guardian he had, pursuant to the statute, agreed to sell
and convey to the railway company the interest of the heirs in this
land for $500, and prayed the court to approve the sale, and indorse
the same on the deed; (2) a certified copy of the record in the office

[1] Vanderburgh, J., took no part in this case.

of the register of deeds of a conveyance to the railway company purporting to be executed by Kinghorn as guardian, with the confirmation and approval of the sale and deed by the probate judge recorded in connection therewith. It affirmatively appeared that there are no records or files of any kind in the probate office of any appointment of Kinghorn as guardian, or of any proceedings in any such matter, except the petition referred to, with the indorsement of filing by the probate judge; and there is no evidence that any such records or files had ever existed, and had been lost or destroyed. There was, therefore, absolutely no evidence that Kinghorn ever was appointed guardian, unless that fact was proved by, or is to be presumed from, the fact that the probate judge confirmed the sale and approved the deed which he assumed to make and execute in that capacity. And such is the contention of defendant's counsel. Invoking the doctrine that the records of the probate court import absolute verity, and that its proceedings, in any case falling within the classes of subjects included in its constitutional jurisdiction, possess the same presumptions in favor of jurisdiction and regularity possessed by the proceedings of superior courts of common-law jurisdiction, and which cannot be impeached in collateral proceedings, he contends that in confirming and approving the sale the probate court adjudicated every fact necessary to make the sale valid, including the fact that Kinghorn was the legal guardian, and that this adjudication is conclusive.

This contention is based upon an erroneous assumption as to what was passed upon and adjudicated in confirming the sale and approving the deed. It merely adjudicated and determined that the sale was a proper one to be made, and that the price paid was an adequate one. The question of the appointment of a guardian, or the validity or fact of such an appointment, was not involved. A guardian's sale presupposes the existence of a guardian; and, if there was no guardian, there was no guardian's sale, and nothing for the order of confirmation to act upon. It was never heard, in the case of any judicial sale, that the action of the court in confirming the sale was an adjudication as to the existence or validity of a judgment or decree authorizing the sale, or that the person who made the sale was such officer as he assumed to be. The order of confirmation is merely an

adjudication that the "sale proceedings" are regular, and in accordance with the execution, process, or decree under which the sale was . assumed to be made, and that the sale was fairly conducted, and the price obtained an adequate one. If the sale was void because there was no judgment authorizing a sale to be made, or because, for any reason, the person making it had no authority to make one, no number of confirmations could make it valid. This was held in *Dawson* v. *Helmes*, 30 Minn. 107, (14 N. W. Rep. 462,)—a case which fully covers and controls the present one. In that case we held that the order of confirmation adjudicated only that the sale was regularly made and fairly conducted, and that the sum bid was not disproportionate to the value of the property, but was not proof that the party making it was guardian. It is true that in that case the sale was one purporting to be made under the statutes regulating ordinary guardians' sales, while the sale in the present case purported to be made under the special provisions regulating sales to railway companies. As the sale proceedings are different in the two cases, this would make some difference in the particular facts which the court would have to pass upon in confirming or approving the sale, but none as to the scope or general effect of the confirmation as an adjudication. The case of *Menage* v. *Jones*, 40 Minn. 254, (41 N. W. Rep. 972,) relied on by counsel, is clearly distinguishable. That was a case where the probate court had granted a license to a guardian in New Hampshire to sell real property in this state, and the jurisdiction of the court to grant the license was attacked by attempting to show that the licensee had no valid appointment as guardian in New Hampshire. This court held that the jurisdiction of the probate court did not. depend upon the validity of the appointment in New Hampshire; that, upon the hearing, the very question which the court had to pass upon was. whether the petitioner was guardian by appointment in that state, and, having jurisdiction to pass upon that question, any judicial error which the court might make in deciding it could not affect its jurisdiction. In such a case the authority of the guardian to make the sale is not derived from the appointment in another state, but solely from the license of the court here, which, while in form a license, is in legal effect an appointment as guardian *pro hac vice*, and a.

license, both in one. The finding of the court that Kinghorn was guardian is therefore without evidence to support it.

The defendant attempted to establish an equitable defence by estoppel, and for that purpose introduced in evidence all the proceedings in the administration of the estate of James Burrell, deceased, which showed that Kinghorn was administrator of that estate, and that as such he charged himself, and credited the estate, with the $500 which he received from the railway company for this deed, and also, perhaps, tended to show that he had used this money for the benefit of the estate, in paying debts and expenses of administration. It is claimed that, although these heirs never received any of this money, yet they indirectly got the benefit of it, because, if it had not been used for the benefit of the estate, it would have been necessary, in order to pay debts, to sell some of the land which descended to the heirs from the decedent, their father, and therefore they are now estopped from asserting the invalidity of this deed unless they refund the consideration which the railway company paid for it. With all due deference to the very able counsel, we hardly think the suggestion is entitled to serious consideration. The land of these heirs was assumed to be sold by one who in no way represented them, and over whom they had no control, either in the disposition of the $500 or otherwise. They were not parties to the administration proceedings. The parties to the settlement of the administrator's accounts were the administrator and the estate which he represented, and the only questions involved in it were as to the receipts and disbursements of the former. We can conceive of no principle of law by which the heirs can be held estopped from claiming their own land by reason of an act to which they were not parties, and over which they had no control, merely because it may have resulted in some indirect benefit being thrust upon them which they had no power to reject.

Judgment reversed.